IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-441-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABHISHEK KRISHNAN'S REAL AND | ) | |
| PERSONAL PROPERTY Specifically | ) | |
| Described As: U.S. CURRENCY IN THE | ) | |
| AMOUNT OF $1,441,813.42 Formerly Held In | ) | |
| TD Ameritrade Account *3860; | ) | |
| U.S. CURRENCY IN THE AMOUNT OF | ) | |
| $1,225,778.30 Formerly Held In Bank of | ) | |
| America Account *3846; U.S. CURRENCY IN | ) | |
| THE AMOUNT OF $3,140.91 Formerly Held in | ) | |
| Bank of America Account *4234; | ) | |
| REAL PROPERTY Described in Deed Book | ) | |
| 015780, Pages 01126-01128 of the Wake | ) | |
| County Registry, Having the Street Address of | ) | ORDER |
| 1421 Ballyclare Court, Raleigh, NC; REAL | ) | |
| PROPERTY Described in Deed Book 017211, | ) | |
| Pages 01862-01863 of the Wake County | ) | |
| Registry, Having the Street Address of 2736 | ) | |
| Laurel Cherry Street, Raleigh, NC; REAL | ) | |
| PROPERTY Described in Deed Book 015037, | ) | |
| Page 01218 of the Wake County Registry, | ) | |
| Having the Street Address of 6205 Cold Water | ) | |
| Court, Raleigh, NC; and any and all proceeds | ) | |
| From The Sale of Said Properties, | ) | |
| | ) | |
| Defendants. | ) | |
| - - - - | ) | |
| Bank of America, NA; Wake County Department | ) | |
| of Tax Administration; Abhishek Krishnan; | ) | |
| American Pure Whey, LLC; US Trade and | ) | |
| Exchange, LLC; | ) | |
| | ) | |
| Claimants. | ) | |

This matter is before the court upon motion (DE 33) by claimants Abhishek Krishnan ("Krishnan"), American Pure Whey, LLC ("APW"), and US Trade and Exchange, LLC ("US T&E") (collectively "claimants"),[1] to stay civil forfeiture proceedings and to extend time to respond to the complaint. Also before the court is motion (DE 37) by the United States of America (the "government") to strike claims of claimants. The motions have been fully briefed, and the issues raised are ripe for ruling. For the following reasons, the motions are granted in part and denied in part as set forth herein.

## BACKGROUND

The government commenced this civil forfeiture action on October 4, 2019, against real and personal property of claimant Krishnan, who is a defendant in criminal case No. 5:19-CR-299-FL-1 (the "criminal case"). In the criminal case, the government filed indictment on July 31, 2019, and superseding indictment on August 28, 2019, asserting 43 felony counts against claimant Krishnan for mail fraud (counts 1-8), introduction of adulterated foods into interstate commerce (counts 9-32), and money laundering (counts 33-43). A warrant for claimant Krishnan's arrest was issued July 31, 2019, and remains unserved, as claimant Krishnan presently resides in India.

By way of summary, the indictment[2] charges that claimant Krishnan, through his company claimant American Pure Whey, LLC ("APW"), defrauded consumers by: 1) making false and fraudulent representations as to the quality of APW's manufacturing facility and processes taking place in New Bern, North Carolina, and the true contents and quality of APW's whey protein

---

[1]      Additional claimants, not pertinent to the instant motions, are referenced herein by their full names, Bank of America, NA, and Wake County Department of Tax Administration, and are not included in the term "claimants" or the "government" as used in the text of this order for purposes of resolving the instant motions.

[2]      Hereinafter, unless otherwise specified, all references to the indictment are to the superseding indictment filed August 28, 2019.

powders sold as a dietary supplement to consumers; and 2) creating and causing to be created fictitious laboratory analysis to falsely certify the contents of APW's whey protein powder. The indictment further charges that claimant Krishnan opened business bank accounts in the name of claimant APW and claimant U.S. Trade and Exchange, LLC ("U.S. T&E"), over which he had sole signatory authority, including TD Ameritrade Account No. *3860 (the "TD Ameritrade Account"), and Bank of America Account Nos. *3846 and *4234, in order to engage in monetary transactions involving criminally derived property from his mail fraud scheme.

In the instant forfeiture complaint, the government seeks forfeiture under: 1) 18 U.S.C. § 981(a)(1)(C) of property constituting or derived from proceeds traceable to an offense constituting a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), and 2) 18 U.S.C. § 981(a)(1)(A) of property involved in a money laundering transaction or attempted money laundering transaction, or property traceable thereto. Defendant property comprises the following seized U.S. currency and three tracts of real property titled in the name of claimant Krishnan:

1. $1,441,813.42 in U.S. Currency (formerly held in the TD Ameritrade Account);

2. $1,225,778.30 in U.S. Currency (formerly held in Bank of America Account No. *3846);

3. $3,140.91 in U.S. Currency (formerly held in Bank of America Account No. *4234); and

4. Residential property at 1421 Ballyclare Court, Raleigh, NC (the "Ballyclare Court Property"); 2736 Laurel Cherry Street, Raleigh, North Carolina (the "Laurel Cherry Street Property"); and 6205 Coldwater Court, Raleigh, North Carolina (the "Coldwater Court Property").

The alleged facts and circumstances supporting the seizure and forfeiture of the defendant properties are contained in a declaration of United States Food and Drug Administration ("FDA")

3

special agent Paul Pierce ("Pierce"), and the superseding indictment in the criminal case, attached to the complaint in the instant matter.

As pertinent to the instant motions, on December 2, 2019, claimant Krishnan filed a claim of interest, as owner of all the defendant property; claimant APW filed a claim of interest, as owner of currency formerly held in Bank America Account Nos. *3846 and *4234; and claimant T&E filed a claim of interest, as owner, of currency formerly held in the TD Ameritrade Account.[3]

On February 19, 2020, claimants filed the instant motion to stay the instant civil forfeiture case, and for an order extending the time to respond to the complaint, pursuant to the Fifth Amendment to the United States Constitution, 18 U.S.C. § 981(g)(2), and Federal Rule of Civil Procedure 6(b)(1)(A), on the basis that claimant Krishnan is subject to indictment in the related criminal case.

The government filed the instant motion to strike claimants' claims on March 23, 2020, pursuant to the fugitive-disentitlement statute, 28 U.S.C. § 2466, on the basis that claimant Krishnan, who filed claims on behalf of himself and other claimants, knows that a warrant has been issued for his arrest, has declined to return to the United States or otherwise continues to evade jurisdiction in order to avoid criminal prosecution, and is not held in custody in any other jurisdiction. In support of the motion, the government relies upon 1) an October 30, 2019, email from paralegal Del Washington to claimant Krishnan, and 2) December 10, 2019, correspondence from counsel for claimant Krishnan and Assistant United States Attorney Susan Menzer ("Menzer"). That same date, the government filed a response in opposition to claimants' motion to stay.

---

[3] Separately, on November 21, 2019, claimant Wake County Department of Tax Administration filed a claim of interest on the defendant real property. On December 3, 2019, claimant Bank of America, NA filed a claim of interest in the defendant real property at 1421 Ballyclare Court, in Raleigh.

4

Claimants responded in opposition to the motion to strike on April 23, 2020, relying upon 1) a schedule of "Untainted and Allegedly Tainted Deposits into [the] TD Ameritrade Account," 2) correspondence between Menzer and counsel for claimant Krishnan, and 3) a declaration of claimant Krishnan.

The government replied in support of its motion to strike on May 14, 2020, relying upon 1) email correspondence between counsel for claimant and counsel for the government, 2) declaration of Clemens Meyers ("Meyers"), a law enforcement consultant, and 3) an email from Owen White, owner of Real Property Management. With leave of court, claimants filed a surreply on May 19, 2020.

## COURT'S DISCUSSION

A.     Fugitive Disentitlement

The government seeks to strike all claims by claimants on the basis of fugitive disentitlement. On the same basis, the government argues that if claimants are disallowed from pursing a claim, their motion to stay pending resolution of the criminal case must be denied. Because, fugitive disentitlement is a threshold issue impacting both motions, the court addresses first its application under the circumstances of the case.

Pursuant to the fugitive disentitlement statute, 28 U.S.C. § 2466(a) –

A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person--

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution--

(A) purposely leaves the jurisdiction of the United States;

(B) declines to enter or reenter the United States to submit to its jurisdiction; or

5

> (C) otherwise evades the jurisdiction of the court in which a criminal
> case is pending against the person; and
>
> (2) is not confined or held in custody in any other jurisdiction for
> commission of criminal conduct in that jurisdiction.

This rule in § 2466(a) "may be applied to a claim filed by a corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies." 28 U.S.C. § 2466(b).

The effect of an order of fugitive disentitlement is "to prevent the claimants from using the U.S. courts to defend their claims to the [defendant] property" in a civil forfeiture action. United States v. Batato, 833 F.3d 413, 425 (4th Cir. 2016). "Section 2466 leaves the application of disentitlement to the court's discretion, . . . (using 'may' instead of 'shall')." Id. at 428. In making a fugitive disentitlement determination under § 2466, the district court may make findings of fact based upon evidence submitted by the parties, all as "relevant part[s] of a holistic analysis." Id. at 432; see, e.g., United States v. All Assets Listed in Attachment A, 89 F. Supp. 3d 813, 828 (E.D. Va. 2015), aff'd sub nom. Batato, 833 F.3d 413 ("[T]he court assesses intent under the totality of the circumstances.").

The statute contains multiple elements, which the court addresses in turn below, followed by analysis of equitable factors bearing on fugitive disentitlement.

1. Warrant

One element necessary to application of § 2466 is that "a warrant or process has been issued" in a criminal case for the claimant's apprehension. 28 U.S.C. § 2466(a). Here, a warrant was issued for claimant Krishnan's arrest in the criminal case. See United States v. Krishnan, No. 5:19-CR-299-FL-1 (DE 6). Accordingly, this element is satisfied.

6

2.      Notice or Knowledge of Warrant

Next, the claimant must have had "notice or knowledge" of the warrant.  28 U.S.C. §
2466(a).  Here, claimant Krishnan had notice or knowledge of the warrant issued in the criminal
case, by virtue of being represented by an attorney in the criminal case as of December 10, 2019,
and by notice of appearance of the same attorney in the instant case on December 2, 2019, where
the government has included the criminal case indictment as an exhibit to its complaint.  (See
Representation Ltr. (DE 38-2); Notice of Appearance (DE 23); Compl. Ex. E (DE 1-6)).  Claimant
Krishnan, as the attorney's client, is "considered to have notice of all facts, notice of which can be
charged upon the attorney."  Link v. Wabash R. Co., 370 U.S. 626, 634 (1962) (quotations
omitted).

Claimants argue that having notice of the criminal proceedings against claimant Krishnan
does not amount to being aware of the warrant for arrest.  But, "the law presumes that an attorney
communicates notice of any matter within the scope of representation to the client." Wells Fargo
Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 303 (4th Cir. 2017) (citation omitted).
Here, the warrant for arrest in the criminal case is a critical form of process, filed on the docket in
the criminal case, and well within the scope of counsel's representation to the client in the criminal
case.  Claimants also rely upon the statement in claimant Krishnan's declaration that he was not
previously aware of the criminal arrest warrant.  (See Krishnan Decl. (DE 46-6) ¶ 2).  This
statement is beside the point, where claimant Krishnan is represented by counsel.

In addition, claimants suggest that the court should not consider the December 10, 2019,
representation letter by his counsel, where he asserts it was obtained through government
misrepresentation and deceit.  The court addresses claimants' arguments regarding alleged
government overreach in addressing discretionary factors related to fugitive disentitlement, later

7

in this order.  For present purposes, the letter speaks for itself, and the court does not find a basis

for discounting its contents entirely under the  evidentiary standard of "a holistic analysis" required

for considering whether the statutory elements are met. Batato, 833 F.3d at 432.

3.      Related Cases

Here, the instant case is a "related civil forfeiture action" to the criminal prosecution against

claimant Krishnan, 28 U.S.C. § 2466(a), where the indictment is incorporated into the forfeiture

complaint, and where the indictment includes a forfeiture notice regarding the same properties.

(See DE 1-6 at 18).

4.      Defendant Not Confined

With respect to the statutory requirement that defendant "is not confined or held in custody

in any other jurisdiction," there is no basis in the record to find that defendant is confined while

living in India.  28 U.S.C. § 2466(a).  Indeed, defendant suggests in his declaration that he is not

presently confined.  (Krishan Decl. (DE 46-6) ¶¶ 3, 4, 8-10).

5.      Intent to Avoid Prosecution

The final and most disputed statutory element is claimant Krishnan's intent to avoid

prosecution.  A person is a fugitive subject to disentitlement where, inter alia, "in order to avoid

prosecution," he "declines to . . . reenter the United States to submit to its jurisdiction." 28 U.S.C.

§ 2466(a)(1).   To find an intent to avoid criminal prosecution, the court need not determine "that

the individual's sole or primary reason for being absent from the United States is evasion." Batato,

833 F.3d at 429.  Rather, it must determine that the individual has a "specific intent" to avoid

prosecution, such that avoiding prosecution is one reason for declining reentry.  Id. at 430.

In this manner, the statute applies even "to individuals with no reason to come to the United

States other than to defend against criminal charges."  Id. at 430.  "A criminal indictment gives

such a person a reason to make the journey, and the statute is aimed at those who resist nevertheless." Id. This rule recognizes that claimants may have many "legitimate reasons to remain where they are, such as jobs, businesses, and families," or health reasons. Id. at 432. For example, the Fourth Circuit has recognized that "poor health might be a reason for [a claimant's] absence." Id. at 431 (citing United States v. Salti, 579 F.3d 656 (6th Cir. 2009)). In such instances, the government nonetheless "might still prove that avoiding prosecution motivated his absence, making him a fugitive subject to disentitlement." Id.

The court may rely upon a wide variety of evidence to make a determination regarding a claimant's specific intent to avoid prosecution. As noted previously, the Fourth Circuit has described this determination as a "holistic analysis." Batato, 833 F.3d at 431. Other courts, including those cited by the Fourth Circuit in Batato, similarly have urged consideration of a "totality of the circumstances." United States v. Technodyne LLC, 753 F.3d 368, 383 (2d Cir. 2014); see United States v. $525,695.24, Seized from JPMorgan Chase Bank Inv. Account #xxxxxxxx, 869 F.3d 412, 420–21 (6th Cir. 2017) (same); United States v. $671,160.00 in U.S. Currency, 730 F.3d 1051, 1056 (9th Cir. 2013) (same); Assets Listed in Attachment A, 89 F. Supp. 3d at 828 (same).

For instance, in Technodyne, the court took into account evidence that the claimants' attorneys, in the months following the indictment of claimants, "made attempts to secure a promise from the government that if [the claimants] returned to the United States the government would not oppose their release on bail." Technodyne LLC, 753 F.3d at 386. "The district court was easily entitled to view those requests, evincing the [claimants'] desire to face prosecution only on their own terms, as a hallmark indicator that at least one reason the [claimants] declined to return in the absence of an opportunity for bail was to avoid prosecution." Id.

9

In this case, claimant Krishnan is a fugitive subject to disentitlement because, in order to avoid prosecution, he has declined to reenter the United States to submit to its jurisdiction. This finding is supported by the following combination of facts, viewed under the totality of the circumstances, demonstrating claimant Krishnan's specific intent to avoid prosecution.

As an initial matter, claimant Krishnan's intent to avoid prosecution is demonstrated by comparing his extensive pre-indictment activities in the United States with the lack of any attempt on his part to reenter the United States following the indictment. Claimant Krishnan created APW in 2009, and US T&E in 2012, with a mailing address in Raleigh, North Carolina, and with a protein manufacturing facility in New Bern, North Carolina. (Pierce Decl. ¶¶ 6-7). Through these entities, claimant Krishnan opened United States financial accounts at Bank of America and TD Ameritrade, in 2010 and 2012. (Id. ¶¶ 8, 10-13). He purchased three residential properties in Raleigh, North Carolina, between 2012 and 2018: 1) the Ballyclare Court property in 2014, with a down payment; 2) the Laurel Cherry St. property in 2018, with a cash transaction; and 3) the Coldwater Court property in 2012, with a mortgage, followed by payoff of the mortgage in 2018. (Id. ¶¶ 79-87).

In 2014, APW engaged in transactions with retail entity in Nebraska, as well as a laboratory purportedly based in Idaho. (Id. ¶¶ 15-26). FDA inspected the APW New Bern manufacturing facility in 2015, at which point an employee told FDA that claimant Krishnan visited the facility on Saturdays to gather inventory information used to reorder supplies, make work orders, send product formulas. (Id. ¶¶ 24-26). APW sold its products from its website, americanpurewhey.com, or toll free telephone number (1-888-399-0580), and it shipped its products from New Bern throughout the United States, with purported laboratory analysis linked to an address in New Bern. (Id. ¶¶ 26, 38, 40, 41-43, 47, 50). FDA issued a warning to claimant

Krishnan in 2016, noting defects in manufacturing processes and product misbranding, to which Krishnan responded in July 2016 assuring he would correct all identified deficiencies. (Id. ¶¶ 31-32). Further FDA inspections ensued in November 2016, and again in July 2019, with a search executed in August 2019. (Id. ¶¶ 34, 36, 50).

Claimant Krishnan caused $6,180,175.99 in deposits into account *3846 between January 2015 and February 2019, constituting revenues derived from the sale of protein powders pursuant to claimant Krishnan's alleged scheme to defraud customers through the sale of misbranded and adulterated products, and through misrepresentations. (Id. ¶ 62). In 2015, claimant Krishnan transferred $500,000.00 in fraud proceeds from account *3846 into the TD Ameritrade Account. (Id. ¶¶ 74-76). Between 2014 to 2019, claimant Krishnan deposited an additional $577,000 into the TD Ameritrade Account. (Id. ¶ 77).

In the meantime, by November or December 2018, claimant Krishnan had left the United States for his native country of India. (Id. ¶ 54). As of August 2019, he continued to run the APW business by providing direction to an employee via phone and email, sending orders daily, determining what is printed on product labels, how to handle batch records. (Id. ¶¶ 52-55, 57). An employee gathers mail for Krishnan in Raleigh and sends it by FedEx to Krishnan in India. (Id. ¶ 57).

In sum, claimant Krishnan developed substantial business operations while in the United States from 2009 to late 2018. During this time he operated a manufacturing facility in New Bern including through his personal presence at the facility, owned three residential properties in Raleigh, maintained mailing addresses in New Bern and Raleigh, and amassed significant financial holdings in United States financial institutions while in the United States. Nonetheless, claimant Krishnan left the United States in late 2018, after he assured FDA in 2016 he would correct

deficiencies in his business practice but never did so. Indictment and arrest warrant issued late July 2019, and agents and law enforcement officers executed a search warrant on his New Bern facility in August 2019.

Based on comparison between claimant Krishnan's substantial prior activities in the United States, and his property remaining in the United States, on the one hand, contrasted with the lack of any attempt on his part to reenter the United States post-indictment, on the other hand, it is reasonable to infer that one reason claimant Krishnan has not sought to reenter the United States is to avoid criminal prosecution.

This finding of specific intent is further supported by claimant Krishnan's post-indictment activities through counsel in the criminal case. On November 27, 2019, claimant Krishnan executed a declaration that he is the owner of all property subject of the instant forfeiture complaint, and the same on behalf of property owned by APW and US T&E. (DE 20, DE 21, DE 22, at 2). On December 2, 2019, at 4:25 p.m., his counsel sent an email to counsel for the government in the instant action, Assistant United States Attorney (AUSA) John Harris ("Harris"), stating that he was "about to file claims on behalf of Mr. Krishnan" in the instant action, and that he is "also filing a motion to stay under 981(g)(2) in light of the related criminal case" and wished to get the government's "position" thereon. (DE 49-1 at 2) (emphasis added). Counsel for claimants entered an appearance in the instant action later that afternoon and filed the instant claims. Then, on December 3, 2019, Harris responded to counsel's email as follows:

> The government would oppose the motion for a stay of the civil case. It is our understanding that Mr. Krishnan currently in India. Unless he has already returned to the United States or is going to be returning to the United States to face the criminal charges against him, we do not believe a stay in the civil case is appropriate. Please let us know if you have reason to believe either are true.

(Id.) (emphasis added). In a follow up email, Harris stated to counsel for Krishnan:

I'm writing to follow up on our conversation from earlier today and your request to stay the civil forfeiture case involving Mr. Krishnan. <u>You indicated that you were primarily seeking to stay the civil-forfeiture case to have time to discuss and understand the criminal case against Mr. Krishnan so that you can advise your client on the pros and cons of returning to the U.S. to face criminal charges</u>. I am open to agreeing to a thirty-day extension to file your answer in the civil case. I believe this will allow sufficient time for you to discuss the criminal case with [Menzer] and to figure out where that case is headed. I will not agree to a stay of the civil case under 18 U.S.C. 981(g) at this time. I'm copying [Menzer] on this email, and will leave the discussion of the criminal case between the two of you.

(<u>Id.</u> at 1) (emphasis added). To this email, counsel for Krishnan responded, on December 10, 2019, "Thank you John [Harris]. I'll be in touch about filing a motion to extend time to file the answer." (<u>Id.</u>).

In the meantime, on that same date, counsel for Krishnan exchanged emails with AUSA Menzer, regarding whether a letter of representation was required to proceed with discussions about the criminal case. Counsel for Krishnan stated: "I'll await your response on whether you are willing to discuss this matter based on <u>my representation that he is my client</u>." (DE 46-3 at 1) (emphasis added). Menzer responded: "This is an unusual case. <u>Your client is a fugitive</u>. He is not a target, but charged with serious offenses. If you have fifth amendment concerns, I will accept a letter of representation." (<u>Id.</u>) (emphasis added). Shortly thereafter, counsel for Krishnan provided the aforementioned representation letter to Menzer, stating "per your request for a written letter of representation, I am writing to inform you that <u>I represent Mr. Krishnan and am interested in speaking with you to determine whether there is a mutually-agreeable resolution that we can reach regard to his criminal matter</u>." (DE 38-2) (emphasis added).

On January 17, 2020, counsel for Krishnan reported to AUSA John Harris:

I had a good initial discussion with [Menzer] about this matter. Due to other matters, <u>I haven't yet had a chance to follow up with Mr. Krishnan to see what he plans to do</u>. Would you consent to another 30-day extension of our deadline to answer/respond to the complaint to give me some time to do that?

13

(DE 49-2 at 2) (emphasis added).  AUSA Harris responded "I would consent to another thirty days.  But that is very likely to be the final consent extension."  (Id. at 1).  Then, on February 13, 2020, counsel for Krishnan states: "Unfortunately, I'm going to have to move to stay," referencing the instant motion by claimants to stay the instant case.  (Id.).

Based upon its context, the court finds this exchange to be reliable and credible evidence of claimant Krishnan's intent, through his counsel, to negotiate favorable terms for claimant Krishnan to return to the United States to face criminal charges.  The fact that claimant Krishnan attempted to do so,  "evincing [his] desire to face prosecution only on [his] own terms," serves "as a hallmark indicator" that at least one reason claimant Krishnan declined to return in the absence of terms established in his favor was to avoid prosecution.  Technodyne LLC, 753 F.3d at 386.  In sum, claimant Krishnan's extensive activities in the United States prior to indictment, coupled with his discussions through counsel regarding the criminal case, demonstrate that claimant Krishnan intends to avoid prosecution by staying in India.

Claimants' arguments in opposition to the foregoing findings are unavailing under the circumstances presented.  Claimants contend that the court properly cannot consider any evidence bearing upon plea discussions, pursuant to rules 408 and 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.  These rules, however, do not preclude the court's consideration of the foregoing evidence.  Rule 408 prohibits admission of evidence of compromise offers and negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Neither the amount of a disputed claim nor impeachment is at issue here.  Moreover, the rule allows admission of such evidence "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal

14

investigation or prosecution." Fed. R. Evid. 408(b) (emphasis added). Where reference to claimant Krishnan's plea negotiations is essential here to determining his intent to avoid prosecution, in accordance with 28 U.S.C. § 2466, the exception in Rule 408(b) properly is implicated.

Federal Rule of Evidence 410 prohibits admission of "a statement made during plea discussions with an attorney for the prosecuting attorney if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Rule 11(f) of the Federal Rules of Criminal Procedure states that the admissibility of any such statement is governed by Rule 410. The government in this instance, however, is not relying upon the admission of the substance of any statements made by claimant Krishnan during plea discussions with AUSA Menzer. Instead, the government relies upon email exchanges between Krishnan's counsel and counsel for the government to demonstrate claimant Krishnan's "desire to face prosecution only on [his] own terms," serving "as a hallmark indicator" that at least one reason claimant Krishnan declined to return in the absence of terms established in his favor was to avoid prosecution. Technodyne LLC, 753 F.3d at 386.

In any event, where the fugitive disentitlement statute expressly requires the court to make findings regarding a claimant's intent "to avoid criminal prosecution" and knowledge "of the fact that a warrant . . . has been issued," 28 U.S.C. § 2466, and where the Fourth Circuit directs the court to conduct a "holistic analysis" of these issues, Batato, 833 F.3d at 431, it follows that the court must take into account the fact that claimant Krishnan has attempted to engage in negotiations from India, as a fugitive, in examining his intent to avoid prosecution. See, e.g., id. at 432 (taking into account evidence that a claimant "was resisting extradition to posture for criminal proceedings, using the ability to avoid prosecution as leverage"); Technodyne, 753 F.3d at 386

15

(considering the claimants' "attempts to secure a promise from the government that if [they] returned to the United States the government would not oppose their release on bail"); Collazos v. United States, 368 F.3d 190, 201 (2d Cir. 2004) (considering "unsuccessful efforts of another attorney acting on [a claimant's] behalf in October 2001 to negotiate a surrender that would not involve [the claimant's] pre-trial detention"). Accordingly, claimants' argument seeking to exclude evidence for consideration by the court in this context is unavailing.[4]

Claimants assert that if the court intends to rely upon discussions between the government and counsel in determining intent, then "a hearing is necessary." (Resp. (DE 46) at 15). But, the evidence at issue is comprised entirely of emails and correspondence between counsel. The government does not rely upon declarations or testimony to demonstrate intent. Accordingly, the court dispenses with hearing because the facts and legal contentions are adequately presented in the materials before this court and hearing would not aid the decisional process. See, e.g., Technodyne LLC, 753 F.3d at 382 ("The court had discretion to make the findings required by § 2466(a) on the basis of the parties' presentations.").

Claimants also argue that Krishnan's prior activities in the United States are irrelevant to a showing of intent, because he left the United States only upon denial of his visa renewal application. Claimants suggest that his immigration status, as well as other reasons such as the COVID-19 pandemic travel restrictions, explain why he has not returned to the United States. As an initial matter, the court does not find credible the suggestion that the sole reason for Krishnan's departure was expiration of his visa, where in 2018 he had already been investigated by the FDA

---

[4] Claimants also argue that the December 10, 2019, representation letter was procured by the government in violation of the Rules of Professional Conduct through government misrepresentation and deceit, and thus should be omitted from the court's consideration for this additional reason. Again, the court addresses claimants' arguments regarding alleged government overreach in addressing discretionary factors related to fugitive disentitlement, in the next section of this order.

and was tasked with remedying all deficiencies noted in that investigation. In any event, even if expiration of his visa was the main impetus for his departure, this does not undermine the significance of his prior activities and ties in the United States as evidence of Krishnan's intent to avoid prosecution at present. Moreover, while his immigration status and COVID-19 travel restrictions provide reasons for his failure to return, they do not undermine the court's finding that another reason is his intent to avoid criminal prosecution. Batato, 833 F.3d at 430 ("[T]he statute applies to persons who may have never set foot within the territorial jurisdiction of the United States, know that warrants are outstanding for them and, as a result, refuse to enter the country. Such individuals will often be foreign nationals with no ties to the United States other than their alleged criminal conduct and the indictment describing it."); see, e.g., United States v. $45,940 in U.S. Currency, 739 F.2d 792, 796 (2d Cir. 1984) ("[The claimant] further contends that he is not a fugitive from justice because he was 'involuntarily deported' by the INS. This circuit recently stated that the intent to flee from prosecution or arrest may be inferred from a person's failure to surrender to authorities once he learns that charges against him are pending.").

In sum, considering the totality of the circumstances, the court finds that one reason claimant Krishnan has not returned to the United States to face the charges pending against him is his intent to avoid prosecution.

Accordingly, all of the required statutory elements for fugitive disentitlement are present.[5] In addition, such disentitlement applies to the claims of claimants APW and US T&E because

---

[5]     The court rejects claimants' additional argument that disentitlement in this instance violates due process, for lack of "fair warning" and because the statute is "void for vagueness," (Resp. (DE 46) at 17), in light of the Fourth Circuit's ruling in Batato. See 833 F.3d at 429 (rejecting constitutional challenge to application of § 2466). In addition, the government gave claimant Krishnan fair warning in December 2019 that a stay of the forfeiture proceedings would not be appropriate unless Krishnan "is going to be returning to the United States to face the criminal charges against him." (DE 49-1 at 2).

17

claimant Krishnan has asserted claims on their behalf. (See, e.g., DE 21 & DE 22, at 2). The court turns next to analysis of equitable factors bearing on disentitlement.

B.    Equitable Factors

As noted above, "Section 2466 leaves the application of disentitlement to the court's discretion." Batato, 833 F.3d at 428. Although the Fourth Circuit has not identified factors bearing upon exercise of such discretion, other courts have identified factors such as government "overreaching" and "weaknesses in the pleadings." United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, 617 F. Supp. 2d 103, 126 (E.D.N.Y. 2007); United States v. $1,474,770.00 in U.S. Currency, 538 F. Supp. 2d 1298, 1302 (S.D. Cal. 2008); see All Assets Listed in Attachment A, 89 F. Supp. 3d at 831 n. 19, aff'd sub nom. Batato, 833 F.3d 413 (citing the aforementioned cases); see also Collazos, 368 F.3d at 201 (stating that the fact that Section 2466 is discretionary "permit[s claimant] to present the district court with any facts and circumstances that might indicate that justice was not served by disentitlement in [claimant's] case").

In this case, claimants raise two issues implicating equitable considerations. The court will address each in turn below.

1.    Alleged Deceit and Unethical Conduct

First, claimants contend that the government acted deceitfully and unethically in obtaining the December 10, 2019, representation letter from counsel for claimant Krishnan, and in later discussions between counsel pertaining thereto. According to claimants:

> the government first welcomed plea discussions, and then criminal counsel for the government stated that she required a letter of representation signed by Mr. Krishnan in order to engage in those discussions, when it appears from the record of communications that the letter was not needed for any purpose related to the criminal case, but was instead sought to bolster the forthcoming fugitive disentitlement motion.

18

(Resp. (DE 46) at 19).  The court disagrees, however, with the premise to claimants' contention that "it appears from the record of communications that the letter was not needed for any purpose related to the criminal case."  (Id.).  AUSA Menzer explained at the time of her request for the letter that "[t]his is an unusual case.  Your client is a fugitive.  He is not a target, but charged with serious offenses," and that she would "accept a letter of representation."  (Resp. Ex. 2 (DE 46-3) at 1).  While claimants suggest that there was impropriety in "bolster[ing] the forthcoming fugitive disentitlement motion," the instant civil case and the criminal case are intimately related, and the importance of considering one in the course of pursuing the other is to be expected as contemplated by the fugitive disentitlement statute, 28 U.S.C. § 2644.  Under the unique circumstances presented, it is not deceitful or unethical for the government to insist upon a representation letter prior to engaging in plea discussions with counsel for claimants.

Claimants also contend that the government acted deceitfully and unethically in later correspondence pertaining to the representation letter.  Claimants cite to April 9, 2020, correspondence from counsel for claimant Krishnan to the government, as well as email communications  dated April 9 to April 15, 2020.  In light of the court's determination that the government did not engage in deceitful or unethical conduct in insisting upon a representation letter, the court also concludes that the government did not engage in deceitful or unethical conduct in explaining its conduct during the time period from April 9 to April 15, 2020.  The court has reviewed the correspondence between counsel and finds that it does not provide an equitable basis for declining fugitive disentitlement under the circumstances of this case.

2.    Government Overreach

Next, claimants contend that a portion of funds seized from the TD Ameritrade account are not properly subject to forfeiture under any viable theory, demonstrating government overreach

entitling them to equitable relief, at least in part, from fugitive disentitlement. The court agrees that partial equitable relief is warranted, but only to the limited extent set forth herein as pertinent to resolution of the instant motions.

In the instant case, the government seeks forfeiture, in part, of all U.S. currency formerly held in the TD Ameritrade Account, comprising a total of $1,441,813.42 in U.S. Currency. It alleges two alternative grounds for forfeiture of such funds. First, it alleges that these funds "were involved in a transaction or attempted transaction in violation of [18 U.S.C. §] 1957, or are traceable to property so involved, and are therefore forfeitable to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A)." (Compl. ¶ 9). "Alternatively," it alleges, "at least $500,000.00 of the TD Ameritrade Funds constitute or were derived from proceeds traceable to an offense constituting a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), including mail fraud, and is therefore forfeitable to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C)." Id.

Then, in the declaration accompanying the complaint, the government alleges four "transfers of fraud proceeds" into the TD Ameritrade Account, in the aggregate amount of $500,000.00, taking place between August 24, 2015, and October 23, 2015. (Pierce Decl. ¶ 75). "In addition to the $500,000 in directly traceable fraud proceeds," the government alleges, claimant Krishnan "deposited an additional $577,000" into the TD Ameritrade Account, and made withdrawals of $10.00. (Id. ¶ 77). On August 2, 2019, "the assets held in the account were converted to U.S. currency and the balance in the account, totaling $1,441,813.42 . . . was seized." (Id. ¶ 78).

Under 18 U.S.C. § 981(a)(1)(A) "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 . . . of this title,[6] or any property traceable to such property" is subject to civil forfeiture to the United States. Alternatively, under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18]),"[7] is subject to civil forfeiture.

With respect to forfeiture under § 981(a)(1)(A), "when legitimate funds are <u>commingled with property</u> involved in money laundering or purchased with criminally derived proceeds, <u>the entire property</u>, including the legitimate funds, is subject to forfeiture." <u>United States v. Kivanc</u>, 714 F.3d 782, 794 (4th Cir. 2013) (emphasis added). "[L]egitimate funds that are commingled with illegitimate funds can be forfeited <u>if the commingling was done to conceal the illegitimate funds</u>." <u>Id.</u> (emphasis added) (citing <u>United States v. McGauley</u>, 279 F.3d 62, 76–77 (1st Cir. 2002); and <u>United States v. Baker</u>, 227 F.3d 955, 970 n. 4 (7th Cir.2000)). In addition, with respect to forfeiture of real property, "[p]roperty involved in a money laundering offense is forfeitable in its entirety, even if <u>legitimate funds</u> have also been invested in <u>the property</u>." <u>United States v. Miller</u>, 911 F.3d 229, 232 (4th Cir. 2018) (emphasis added).

By contrast, although the Fourth Circuit has not directly addressed the issue, other circuits have held that where legitimate and illegitimate funds are held in a financial account, and not involved in a concealment money laundering offense, only the illegitimate funds are subject to forfeiture, and not the entire account. "[T]he mere pooling or commingling of tainted and

---

[6] Section 1957 of Title 18 of the United States Code prohibits "transaction" based money laundering, specifically "[w]hoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

[7] Specified unlawful activity, as pertinent here, includes mail fraud, under 18 U.S.C. § 1341. See 18 U.S.C. §§ 1956(c)(7) & 1961(1).

untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture." United States v. Bornfield, 145 F.3d 1123, 1135 (10th Cir. 1998). Rather, "forfeiture of legitimate and illegitimate funds commingled in an account is proper [where] the government demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme." Id.; see United States v. Seher, 562 F.3d 1344, 1368 (11th Cir. 2009) ("Though the pooling or commingling of tainted and untainted funds would not by itself render the entirety of an account subject to forfeiture, if the government establishes that the defendant did so to facilitate or 'disguise' his illegal scheme, then forfeiture is acceptable.") (quotations omitted); United States v. $448,342.85, 969 F.2d 474, 476 (7th Cir. 1992) ("Once we distinguish the money from its container, it also follows that the presence of one illegal dollar in an account does not taint the rest.").

Based on the foregoing principles of law, claimants have raised substantial questions about the merits of the government's claim to currency formerly in the TD Ameritrade Account in excess of the $500,000.00 identified as proceeds of fraud. With respect to funds in the TD Ameritrade Account, the government alleges the funds were involved in "transaction" money laundering in violation of 18 U.S.C. § 1957, and it does not allege that the account was used for concealment money laundering or to disguise the funds. (Compl. ¶ 9). In the alternative it alleges that $500,000 in the account was derived from fraud. (Id. ¶ 10). The government alleges only four "transfers of fraud proceeds" into the TD Ameritrade account, in the aggregate amount of $500,000.00, taking place between August 24, 2015, and October 23, 2015. (Pierce Decl. ¶ 75). The remaining funds in the account were from deposits of an "additional $577,000" into the TD Ameritrade Account, with the last account balance totaling $1,441,813.42 (Id. ¶¶ 77-78).

In this respect, the government has not alleged $577,000 in legitimate funds were commingled with the $500,000 in illegitimate funds, with "commingling . . . done to conceal the illegitimate funds." Kivanc, 714 F.3d at 794. Nor has it alleged claimant Krishnan otherwise "pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme." Bornfield, 145 F.3d at 1135. Accordingly, equitable considerations bearing on government overreach and weaknesses in this portion of the government's claim weigh in favor of exercise of the court's discretion to decline to strike that portion of claimants' claims, and to grant a stay as to that portion of the government's forfeiture claim, related to currency formerly in the TD Ameritrade Account in excess of $500,000.00.

The government argues that claimants' contentions about the forfeitability of the TD Ameritrade funds go to the merits of the case, which should be litigated only after claimant Krishnan returns to the United States to face his criminal charges. This argument misses the mark for two reasons. First, the court is not determining the merits of the case in resolving the instant motions, but rather only that claimants have raised substantial questions about the merits, solely as it relates to a portion of the currency formerly in the TD Ameritrade Account.[8] Second, the government's argument does not recognize the court's duty to take into account equitable considerations, in the exercise of the court's discretion, at this stage of the proceedings. Although the Fourth Circuit has not addressed the issue, other courts have recognized that merits considerations may be taken into account, particularly if the government is "overreaching," in exercising discretion to impose fugitive disentitlement. United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, 617 F. Supp. 2d 103, 126 (E.D.N.Y. 2007); see

---

[8] For the same reason, the court declines claimants' request, advanced in surreply, to release immediately untainted funds seized from the TD Ameritrade Account. (See Surreply (DE 51) at 7-8). The court addresses solely the motions properly pending before the court, and the court leaves for determination at a later date, if and when warranted, as to the disposition of such funds.

23

also Collazos, 368 F.3d at 201 (stating a claimant may "present the district court with any facts and circumstances that might indicate that justice was not served by disentitlement in [claimant's] case").[9]  In sum, in exercising the court's discretion, the court is not precluded from considering issues pertaining to the merits of the claims.

The government also argues that it properly may seek forfeiture of all the currency formerly in the TD Ameritrade Account, on the theory that legitimate funds were commingled with property involved in money laundering.  The cases relied upon, however, to support this proposition are instructively distinguishable.  For example, the government cites Kivanc.  714 F.3d at 794.  But, in that case, the court considered the forfeiture of real property, where a portion of the sales proceeds came from an allegedly legitimate source.  Id.  Moreover, the court applied this rule in the context of "concealment money laundering," which by definition requires that the transaction was designed "to conceal or disguise" the proceeds of unlawful activity.  Id. at 795-96; see also id. at 794 (citing United States v. McGauley, 279 F.3d 62, 76–77 (1st Cir.2002) for the proposition that "legitimate funds that are commingled with illegitimate funds can be forfeited if the commingling was done to conceal the illegitimate funds") (emphasis added).  Here, where the government does not allege such concealment, (see, e.g., Compl. ¶ 8; Pierce Decl. (DE 1-5) ¶¶ 74-78), the holding in Kivanc is inapposite.

Similarly distinguishable is United States v. Miller, 911 F.3d 229, 233-234 (4th Cir. 2018), where the court examined forfeiture of real property, and it did not address the issues pertaining to forfeiture of currency in accounts, pursuant to the analysis set forth by other circuit courts cited previously, including Bornfield, 145 F.3d at 1135; Scher 562 F.3d at 1368; and $448,342.85, 969

---

[9]        The case cited by the government in support of its argument, United States v. Aguilar, 782 F.3d 1101, 1109 (9th Cir. 2015), is inapposite because it does not involve application of the fugitive disentitlement statute, and it does not address exercise of the court's discretion under such statute, but rather only a motion to set aside default judgment under Rule 60(b)(1).

F.2d at 476. See also United States v. Teyf, No. 5:18-CR-00452-FL-2, 2019 WL 1767562, at *2 (E.D.N.C. Apr. 22, 2019) (addressing motion for release from seizure of an automobile, purchased through trade-in allowance and funds with connection to money laundering offenses charged). Again, while the court does not resolve this merits issue determinatively at this juncture, claimants have raised substantial questions concerning the merits of the forfeiture claim to the portion of TD Ameritrade Account having no alleged link to the money laundering transactions.[10]

In sum, the court exercises its discretion to decline to strike that portion of claimants' claims, and to grant a stay as to that portion of the government's forfeiture claim, related to currency formerly in the TD Ameritrade Account in excess of $500,000.00, based upon substantial issues of government overreach regarding that portion of the claim. For all other claims by claimants, claimants do not present a valid equitable basis for declining fugitive disentitlement and striking of such claims. Therefore, the government's motion to strike in that remaining part is granted, and claimants' motion to stay such remaining forfeiture claims pending conclusion of the criminal case is denied.

## CONCLUSION

Based on the foregoing, claimants' motion to stay (DE 33) is GRANTED IN PART and DENIED IN PART, and the government's motion to strike (DE 37) is GRANTED IN PART and DENIED IN PART, as set forth herein. The motion to stay is granted, and the motion to strike is denied, only in that part pertaining to forfeiture of funds formerly in the TD Ameritrade Account in excess of $500,000.00. With respect to all other civil forfeiture claims asserted by the

---

[10] The government asserts in its reply brief that "[w]hen [Krishnan] transferred the $500,000 in criminal proceeds to the account, those funds were used to pay down his margin loan balance, through which he had financed numerous trades; indeed, his margin loan balance fluctuated based on his very active trading history." (Reply (DE 49) at 18). The court leaves for another day the impact of margin trading on currency available in the TD Ameritrade Account, on the determination of which funds in the account were tainted and which were untainted.

government, the motion to strike is granted. Accordingly, all of claimants' claims with respect to defendant property except for their claims to funds formerly in the TD Ameritrade Account in excess of $500,000.00, are hereby STRIKEN in accordance with 28 U.S.C. § 2466. As a result, all claims of claimant APW are stricken, and claimant APW is TERMINATED from the case. The remaining part of one claim by claimants Krishnan and US T&E, to funds formerly in the TD Ameritrade Account in excess of $500,000.00, is STAYED until such time as the related criminal proceedings have been finally determined or upon further order of the court, and the deadline for fling an answer or other response to this claim is extended until 14 days after the stay is lifted.

SO ORDERED, this the 29th day of June, 2020.

LOUISE W. FLANAGAN
United States District Judge