IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:19-CV-00441-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ABHISHEK KRISHNAN'S REAL AND PERSONAL PROPERTY, | ) |
| | ) |
| Defendants. | ) |

### CONSENT ORDER OF FORFEITURE OF REAL PROPERTY KNOWN AS 6205 COLDWATER COURT, RALEIGH, NORTH CAROLINA

By signing below, the undersigned parties have consented to the entry of this Order and have informed the Court of the following:

1. On October 4, 2019, the United States initiated this action by filing a civil complaint for forfeiture *in rem* (the "Complaint") seeking the forfeiture of certain real and personal property associated with Abhishek Krishnan or companies' owned by him. [D.E. 1.]

2. One of the properties for which the United States sought forfeiture in the above-styled civil-forfeiture action was real property, with all improvements thereto, legally described in a deed recorded in Book 015037, Page 01218 of the Wake County Registry, being last titled in the name of Abhishek Krishnan, and having the street address of 6205 Coldwater Court, Raleigh, North Carolina (the "Coldwater

1

Court Property").

3. Commensurate with the filing of the Complaint, the United States filed a notice of complaint for forfeiture of real property providing notice of the action with respect to the Coldwater Court Property [D.E. 4.]

4. The United States thereafter served notice of this action and a Copy of the Complaint to all persons who reasonably appeared to be a potential claimant on the facts known to the government, including (i) the record owner of the property and potential claimant Abhishek Krishnan; (ii) potential claimant Wake County Department of Tax Administration ("Wake County"); and (iii) Pamela J. Santos and Luis A. Santos Cruz (collectively, the "Santoses"), who currently reside at the Coldwater Court Property as tenants under a residential lease agreement (the "Coldwater Court Lease"). The United States also published notice on an official internet government site as required by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture (the "Supplemental Rules").

5. In accordance with 18 U.S.C. § 985, the United States also caused the appropriate notice to be posted by a Deputy United States Marshal at the Coldwater Court Property on or about October 29, 2019. [D.E. 12.]

6. On November 21, 2019, Wake County filed verified claims to, among other properties, the Coldwater Court Property [D.E. 19], and subsequently answered the government's Complaint [D.E. 28].

7. On December 2, 2019, Abhishek Krishnan filed verified claims to, among other properties, the Coldwater Court Property (the "Krishnan Claims"). [D.E. 20.]

8. The United States moved to strike the Krishnan Claims on fugitive-disentitlement grounds. [D.E. 37, 38.] The Court granted the United States' motion with respect to, among other properties, the Coldwater Court Property, on June 29, 2020. [D.E. 55.]

9. No other person or entity has filed a claim or answer in this action as to the Coldwater Court Property, and, under Rule G(5) of the Supplemental Rules, the time for filing a claim and answer in this action has expired.

10. The Plaintiff United States, and Claimant Wake County, and potential claimants the Santoses (together, the "Claimants") (collectively, the "Parties") hereby stipulate and agree to finally resolve their claims on the following terms.

11. Claimants consent to the entry of a Consent Order of Forfeiture (a) forfeiting all right, title and interest in the Property to the United States; (b) providing that the United States may take immediate possession of the Property and shall dispose of the Property in accordance with the law; (c) providing that Wake County shall be paid from the available "Net Sale Proceeds" of the Property; and (d) providing that the Property shall be forfeited subject to the Santoses' possessory interests in the Property.

12. The Parties have duly authorized the signatories below to consent to these terms on their behalf.

13. The Parties recognize, and by entry of this Order, the Court finds, that this Order is fair, reasonable, and in the public interest.

In view of the foregoing, it is ORDERED as follows:

### ORDER

1. Except as expressly provided herein, all right, title, and interest in the Defendant Coldwater Court Property, as more specifically described in the attached **Exhibit A**, is hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and/or 18 U.S.C. § 981(a)(1)(A).

2. Upon the entry of the Consent Order of Forfeiture, the United States shall dispose of the Coldwater Court Property in accordance with the law. Any and all liens of record which are not specifically recognized herein, are hereby released as of the date of the closing of the sale of the Coldwater Court Property.

3. Except as expressly recognized herein, the forfeiture of the Coldwater Court Property to the United States is free and clear of all interests and no other person or entity shall have any right, title, or interest in the Coldwater Court Property. The United States having clear title to the Coldwater Court Property may warrant good title to any purchaser or transferee, subject to the terms of this Order.

4. The Coldwater Court Property is forfeited subject to the Santoses' possessory interest in the Coldwater Property, which possessory interest shall terminate on April 30, 2021, unless the United States and the Santoses agree upon an earlier termination date. Any sale of the Coldwater Court Property by the United States shall be subject to said possessory interest.

5. The United States shall request that any and all security deposits or rent deposits held by any property manager shall be turned over to the United States

and held in escrow pending disbursal or application in accordance with the Coldwater Court Lease.

6. Upon entry of this Order, the Santoses shall execute and comply with the Occupancy Agreement attached as **Exhibit B**, providing the agreed terms for the Santoses' continued possession of the Coldwater Court Property.

7. Upon the closing of the sale of the Coldwater Court Property, the United States shall pay from the Coldwater Court Property's "Net Sale Proceeds," as that term is defined below, the amounts set forth below.

8. The "Net Sale Proceeds" of the Coldwater Court Property shall be calculated as the gross sales proceeds that the United States realizes from the sale of the Property, less the following amounts that the United States pays, in the following priority, to the extent that sufficient gross sales proceeds are available to pay these amounts:

    a. First, to the United States Marshals Service (USMS) for the payment of any and all costs and expenses incurred by the USMS in connection with the seizure, maintenance, forfeiture, marketing and any and all costs of sale, including real estate commissions, escrow fees, document recording fees not paid by the buyer, title fees, insurance costs, if any; and transfer taxes;

    b. Second, to the Wake County Department of Tax Administration for all unpaid real property taxes due and owing up to the date of the entry of this Consent Order of Forfeiture and, in any event,

all unpaid real property taxes due for the 2020 tax year; provided, however, that the United States shall not be liable for the payment of any further state or local property taxes from the date of the entry of this Consent Order of Forfeiture; and

    c.    Finally, any remaining balance shall be forfeited to the United States and shall be disposed of according to law.

9. In the event that the Net Sale Proceeds are not sufficient to pay the total taxes due to Wake County, the "Net Sale Proceeds," as calculated above, shall constitute full satisfaction of Wake County's claim. In other words, in no event shall the United States be obligated to pay Wake County any amount in excess of the Net Sale Proceeds.

10. The payment to Wake County shall be in full settlement and satisfaction of any and all claims that Wake County has or might have arising from and relating to the seizure, forfeiture, and sale of the Coldwater Court Property.

11. At the closing of the sale of the Coldwater Court Property, Wake County shall deliver in proper form to the closing agent an appropriate tax certification providing that there are no outstanding tax liens for prior tax years against the Coldwater Court Property in order to permit the sale of the Coldwater Court Property to close. In the event that the Net Sale Proceeds are not sufficient to pay Wake County the entire amount of the taxes due on the Coldwater Court Property, Wake County shall nonetheless release its lien to allow the closing of the sale of the Coldwater Court Property. Any failure by Wake County to release its property tax liens to allow

6

Case 5:19-cv-00441-FL   Document 64   Filed 10/15/20   Page 6 of 17

the closing of the sale of the Coldwater Court Property shall be considered a violation of this Order.

12. Claimants understand and agree that the United States reserves the right to terminate the forfeiture action at any time for legal or economic reasons. In such event, the United States shall promptly notify the Claimants of such action. Any discretionary termination of the forfeiture shall not be the basis for the award of any attorney's fees to Claimants.

13. The Claimants hereby release and waive any and all claims they have or might have against the United States, the United States Department of Justice, the United States Marshals Service, and all agents, officers, and employees thereof (hereinafter the "Released Parties"), relating to the United States' seizure, forfeiture, and sale of the Coldwater Court Property, including, but not limited to, any additional claims for lost profits or interest and any claims under 28 U.S.C. § 2465. Such waiver shall be void if the sale of the Coldwater Court Property does not close.

14. Each party shall bear its own costs, expenses, and attorney's fees in this litigation.

15. The Court shall retain jurisdiction for the purpose of enforcing the terms of this order.

[*Remainder Left Intentionally Blank*]

16. As this order constitutes a final judgment with respect to less than all defendants in this matter, in accordance with Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that entering such judgment at this time is appropriate and there is no just reason for delay.

SO ORDERED this  15th  day of  October , 2020.

_____
LOUISE W. FLANAGAN
United States District Judge

Consented to by:

_____
JOHN E. HARRIS
Attorney for United States of America

_____
KENNETH R. MURPHY, III
Attorney for Wake County Department
of Tax Administration

PAMELA SANTOS

LUIS A. SANTOS-CRUZ

K015037PG01220

EXHIBIT A

BEING LOT 248, AND A PART OF LOT 247, LAKEPARK SUBDIVISION, PHASE II, SECTION III ACCORDING TO BOOK OF MAPS 1978 PAGE 296 AND BOOK OF MAPS 1978 PAGE 628, WAKE COUNTY REGISTRY AND ACCORDING TO A SURVEY AND MAP OF THE "PROPERTY OF JAMES C. HIGHSMITH AND WIFE, YVONNE W. HIGHSMITH", BY JAMES A. MCNEILL, R.A., DATED JUNE 8, 1979.

AND MORE PARTICULARLY DESCRIBED AS FOLLOWS :

BEGINNING AT AN EXISTING IRON PIPE ON THE NORTHERN RIGHT-OF-WAY LINE OF COLDWATER COURT, SAID EXISTING IRON PIPE BEING THE COMMON CENTER OF LOTS 248 AND 249 OF THE HEREINAFTER REFERRED TO PLAT MAP; RUNS THENCE ALONG THE RIGHT OF WAY LINE OF COLDWATER COURT S 52° 25' W 46.38 FEET TO A POINT; RUNS THENCE ALONG A CURVE RADIUS WITH THE RIGHT OF WAY LINE OF COLDWATER COURT 2 .81 FEET TO A POINT; RUNS THENCE ALONG A CURVE RADIUS WITH THE R.IGHT OF WAY LINE OF COLDWATER COURT 30.57 FEET TO AN EXISTING IRON PIPE, THE COMMON CORNER OF LOTS 247 AND 248; THENCE ALONG THE COMMON LINE OF LOTS 247 AND 248, N 26° 31' W 160.30 FEET TO AN EXISTING IRON PIPE, THE COMMON CORNER OF LOTS 247 AND 248; THENCE ALONG THE COMMON LINE OF LOTS 248 AND 250 N 86° 48' 40" E 73.43 FEET TO AN EXISTING IRON PIPE, THE COMMON CORNER OF LOTS 248 AND 249, THENCE ALONG THE COMMON LINE OF LOTS 248 AND 249, S 37° 35' E 140.00 FEET TO THE POINT OF THE BEGINNING.

BEING THE SAME PROPERTY CONVEYED TO JAMES C. HIGHSMITH AND WIFE, YVONNE W. HIGHSMITH BY DEED FROM AMMONS CONSTRUCTION COMPANY, INC RECORDED 07/18/1979 IN DEED BOOK 2750 PAGE 489, IN THE REGISTER OF DEEDS OFFICE OF WAKE COUNTY, NORTH CAROLINA.



GOVERNMENT EXHIBIT
A



# UNITED STATES MARSHALS SERVICE
# OCCUPANCY AGREEMENT

**Property Address**: _____6205 Coldwater Court, Raleigh, N.C. 27612_____

**Case Caption:** *United States v. Abhishek Krishnan's Real and Personal Property*, Case No. 5:19-cv-441-FL, United States District Court for the Eastern District of North Carolina, Western Division

This Occupancy Agreement ("Agreement") is between the United States of America, United States Marshals Service ("USMS") and the undersigned occupant (singularly or collectively "Occupant"), (collectively "the Parties"). The parties agree that the Court has authorized the USMS to seize and take custody of the property identified above (the "Property"). The Parties agree the Occupant may continue to occupy the Property in accordance with the following terms:

1. **Prior Lease Agreement Integration.** The lease and associated addendums (collectively, the "Lease") attached to this Agreement includes terms that the Parties shall abide by and comply with notwithstanding the forfeiture of the Property. If any term of this Agreement conflicts with the Lease, the term in the Lease shall prevail, except that: (1) any illegal and/or obsolete term of the Lease shall be struck; (2) all payments shall be directed to the USMS or its representative(s), as provided by this Agreement and (3) federal law shall apply to the interpretation and enforcement of this Agreement. In the event that the Lease does not address a term contained in this Agreement, this Agreement, including but not limited to the provisions related to compliance with all criminal laws, shall apply.

2. **Payment.**

    a. The Occupant shall pay the amount of $1,605 to the USMS each month the Occupant occupies the Property, representing the amount set forth in the attached Lease, but reduced by the $10 per month "Preventative Program Fee" that is no longer applicable due to the discontinuation of HVAC delivery services.

    b. **To receive proper credit for payment, both (1) the name of the Occupant and (2) the address of the Property must be included on the check.**

    c. The payment shall be payable to the "United States Marshals Service" and shall be delivered to the following address:

    **Address for payments by US Mail:**
    United States Marshals Service
    c/o ORE Financial Services
    PO BOX 679940
    Dallas, TX 75267-9940

GOVERNMENT EXHIBIT
B

# UNITED STATES MARSHALS SERVICE
# OCCUPANCY AGREEMENT

**Address for payments by overnight courier (UPS, FedEx, DHL):**
United States Marshals Service
c/o ORE Financial Services
Lockbox No: 679940
1200 E. Campbell Rd. Ste. 108
Richardson, TX 75081

3. **Failure to Pay.** If the Occupant fails to pay any amount due under the Lease within 5 days of the due date, the Occupant shall pay the late fee set forth in the attached Lease to the USMS. The Occupant agrees that late charge is not a penalty, but is to reimburse the USMS for the additional administrative costs resulting from the late payment.

4. **Condition of the Property.** The Occupant knows the condition of the Property and agrees that the USMS has made no representations regarding the condition of the Property. Occupant hereby accepts the Property "as is" by executing this Agreement. The Occupant shall give the USMS and/or its contractor access to the property to conduct an inspection and document the condition of the Property. At the termination of this Agreement, the Property shall be in the same condition, excepting normal wear and tear. The Occupant shall be liable for any damages to the Property, excepting from normal wear and tear, during the term of the Agreement.

5. **Maintenance.** The Occupant must maintain the Property in accordance with the terms of the Lease, including, but not limited to, the Maintenance Addendum of the Lease. In accordance with the terms of the Lease, the Occupant shall maintain the Property in the same or better condition as exists on the date the USMS takes custody of the Property (as documented by the USMS' completion of the Custody Stabilization Report and photographs taken on the date the USMS seized and took custody of the Property), reasonable wear and tear excepted. Unless the Lease specifically provides otherwise, the word "maintain" includes but is not limited to: (1) keeping the property free of dangerous animals, dangerous activities, hazards and hazardous materials including but not limited to any article or thing of a dangerous, flammable, or explosive character that might significantly increase the danger of fire on the Property, or that might be considered hazardous by a responsible insurance company; (2) keeping all structural components such as the roof, windows, window screens, floors, steps, porches, exterior walls and foundations in the same or better condition as existed upon entering this Agreement; (3) keeping all heating, air conditioning, plumbing, electrical, gas, oil, and other power facilities in good working condition; (4) keeping the Property clean and sanitary; (5) performing snow removal, waste removal and lawn care; and (6) providing all other ordinary and necessary routine maintenance. To the extent that repairs or maintenance are necessary and the responsibility or obligation of the Landlord under the Lease, the Occupant shall report the condition requiring maintenance or repair to the USMS and/or the USMS's designee responsible for the maintenance of the Property.

6. **Repairs.** The Parties understand and agree that the United States has taken custody of the Property pursuant to a Consent Order of Forfeiture and that the USMS intends to sell the Property pursuant to such Order. The Occupant understands and agrees that the USMS has no responsibility



of any kind or nature whatsoever to maintain, repair, improve, alter or in any way incur any expense in connection with maintaining or repairing any part of the Property, except as set forth in the Landlord's obligations in the Lease. In the event of any failure in any structure such as the roof, or any system such as HVAC, plumbing, water, or electricity that renders the Property uninhabitable, the Occupant shall immediately report the condition to the USMS and/or the USMS's designee responsible for the maintenance of the Property.

7. **Utilities and Services.** The Occupant and the USMS shall be responsible for the payment of those utilities and services set forth in the attached Lease. In the event that the Occupant subsequently incurs utility charges, for a utility for which the USMS must pay, that are excessive (i.e., charges that significantly exceed the reasonable and customary charges for a property of similar size and characteristics in the same geographic location, or charges that substantially exceed prior utility bills and have no reasonable explanation such as weather differences), then the Occupant shall be responsible for reimbursing the USMS for the excessive utility bill. The Occupant agrees that incurring excessive utility charges constitutes a default for which the USMS may terminate the Lease.

8. **Alterations.** The Occupant agrees not to remove, destroy, alienate, transfer, detract from, remodel or alter in any way, the Property or any fixture, which is part of the Property, ordinary wear excepted, without express written consent of the USMS. The Occupant acknowledges that the removal or destruction of property under the care, custody, or control of the USMS may constitute a violation of Federal criminal law including 18 U.S.C. § 2233, which provides for a fine not to exceed $2,000, or imprisonment not to exceed 2 years, or both, for the dispossession of any property taken, detained or seized by the USMS.

9. **Occupant**. No adult shall occupy the Property if they have not signed an Occupancy Agreement. No person shall occupy the property if they are not specifically listed below. The parties agree that only the following adults identified by name and minors identified by name and age may occupy the Property:

| | |
|---|---|
| **Authorized Adult Occupants**: | Pamela J. Santos |
| **Authorized Adult Occupants**: | Luis A. Santos Cruz |
| **Authorized Minor Occupants**: | Diego Santos |

The term "occupy" shall mean spending 5 or more consecutive nights or spending 5 or more nights within any 30-day period at the Property.

10. **Authorized Animals.** No animals, whether dangerous or not, may occupy the Property without the express written permission of the USMS. Any animal authorized to occupy the Property shall be maintained and properly licensed and inoculated as required by local, county, or



state statute, ordinance or health code. No animal of vicious or dangerous disposition shall be allowed to occupy the Property for any reason whatsoever. Whenever any animal constitutes a threat to the health or safety of other occupants or neighbors, or otherwise creates a nuisance, which disturbs the rights, comfort, or quiet enjoyment of other occupants or neighbors, which is reasonably documented in writing, the Occupant shall be sent notice to remove the offending animal within ten (10) days. If any animal is authorized by this Agreement or by the USMS in writing, the Occupant must protect, feed and provide all reasonable and necessary medical or veterinary care for such animal. The below listed Authorized Animals are authorized in accordance with the Pet Addendum executed as part of the Lease.

> **Authorized Animals**: Two Chihuahua mix dogs (names "Ava" and "Austin") weighing approximately 9 and 11 pounds, respectively.

11. **No conveyance.** The Occupant shall not convey, sell, lease, or sublease the Property, list or rent the Property on any rental site such as HomeAway, VRBO, Airbnb or Craigslist, or attempt to transfer title to the Property for the duration of this agreement.

12. **No Assignment.** The Occupant agrees that this Agreement is not transferable.

13. **Lawful Conduct.**

   a. **Compliance with Laws and Regulations.** The Occupant and every other person occupying the Property shall comply with all federal, state, and local laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, such as fire insurance underwriters, while at the Property.

   b. **Compliance with Criminal Laws.** The Occupant and every other person occupying or visiting the Property, shall not violate, and shall not allow any other person present at the Property to violate, any federal, state, or local criminal law while at the Property. Breach of this provision constitutes a default which the Occupant will not be given an opportunity to cure. Instead, the Occupant shall vacate the Property within 7 days of receiving the Notice to Vacate arising out of a breach of this provision. In the event the Occupant does not vacate within 7 days of the delivery of such Notice to Vacate, the Occupant understands and agrees that the USMS shall remove the Occupant and their personal property from the Property at the Occupant's expense.

14. **Insurance.** The Occupant shall maintain insurance in accordance with the terms of the attached Lease. All insurance policies shall name the USMS as an additional insured. The Occupant shall deliver a copy of the above-described insurance policies to the USMS no later than the 10th calendar day following the execution of this Agreement or provide evidence that such insurance is not commercially available. The Occupant shall have no right or claim to any such insurance proceeds payable with respect to improvements, except for any proceeds payable for

# UNITED STATES MARSHALS SERVICE
## OCCUPANCY AGREEMENT

Occupant's personal property or trade fixtures including inventory, bailments and other such business assets.

15. **Indemnification.** The Occupant shall indemnify the USMS in accordance with the terms of the attached Lease for indemnifying the Landlord.

16. **Loss or Damage to Occupant's Personal Property.** The USMS will not be responsible or liable to Occupant for any loss or damage resulting to Occupant or his/her personal property, or the personal property of any guests of the Occupant, that may occur by or through the acts or omissions of persons occupying adjoining premises or from any defect or malfunction on the Property.

17. **Release.** The Occupant, on behalf of him/herself, his/her guardians, heirs, executors, administrators, employees, principals and assigns, hereby releases any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, arising from any and all known or unknown, foreseen or unforeseen causes, which they may have or hereafter acquire against the United States of America, its agencies, agents, officers, or employees, arising from the occupancy of the Property.

18. **Notice.** Any notice required by this Agreement shall be sufficient if provided in writing, and sent by facsimile transmission (with confirmation of receipt), hand delivery, or certified and registered mail (return receipt requested and first-class postage prepaid), if to Occupant, at the Property, and if to the USMS, at the following address:

| | |
|---|---|
| Address: | **UNITED STATES MARSHALS SERVICE** |
| | **c/o ORE FINANCIAL** |
| Name: | _____ |
| Title: | Asset Analyst |
| | P.O. Box 671346 |
| | Houston Texas 77267 |
| | |
| Overnight Address: | **UNITED STATES MARSHALS SERVICE** |
| | **c/o ORE FINANCIAL** |
| Name: | _____ |
| Title: | Asset Analyst |
| | Lockbox No: 679940 |
| | 1200 E. Campbell Rd. Ste. 108 |
| | Richardson, TX 75081 |
| 24 Hour Number: | (888) 600-3004 |

or to such other address as the USMS may specify by written notice. Notice shall be deemed to have been delivered as of: the date faxed as indicated on the facsimile confirmation receipt, the date personally delivered as indicated in a return of personal service, or the date delivered by



certified and registered mail as indicated on the certified mail receipt. Any notice that is given or served in a manner other than as provided in this paragraph shall not be valid.

19. **Right of Entry.**

   a. **Without Notice.** The Occupant shall allow the USMS and any contractors of the USMS to enter the Property at any time without notice for an emergency and/or any time the Occupant gives consent. The word emergency includes anything that could reasonably create an imminent danger of personal injury to persons located on or in the vicinity of the Property, or damage to or destruction of the Property.

   b. **With Notice.** The USMS and any contractors of the USMS may enter the Property upon reasonable notice to the Occupant and at a reasonable time for the purpose of inspection, appraisal, marketing or repair of the Property. Reasonable notice is a minimum of twenty-four (24) hours prior to entry. Reasonable time is between the hours of 7:30 a.m. and 8:00 p.m.

20. **Termination.** Either party may terminate the Lease and/or this Agreement in accordance with the terms of the Lease.

21. **Breach of Agreement.** Unless there is a breach of the Lawful Conduct provisions contained in Paragraph 13(b), the USMS shall send notice of a breach of the attached Lease and such breach shall be noticed and potentially cured in accordance with the terms of the attached Lease. If the Occupant breaches the Lawful Conduct provisions contained in paragraph 13(b), the Occupant shall not be given the opportunity to cure the breach and must vacate the Property within 7 days from the date of delivery of the notice of the breach.

22. **Failure to Vacate.** If the Occupant fails to vacate the Property in accordance with the terms of this Agreement, any Notice to Vacate or any Order to Vacate, and the USMS removes the Occupant from the Property, the Occupant shall be liable for all costs associated with removing the Occupant, including attorneys' fees.

23. **Removal of Personal Property.** The Occupant shall remove all personal property prior to vacating the Property and leave the Property broom clean. Any personal property remaining after the Occupant vacates the Property, shall be removed and disposed of by the USMS and the Occupant shall be liable for all costs associated with removing the personal property, including attorneys' fees.

24. **Applicable Law.** This Agreement shall be interpreted and enforced in accordance with federal law. Any and all disputes arising under this Agreement shall be determined by the federal court having jurisdiction over the related asset forfeiture action. The United States District Court



shall enforce the terms of this Agreement, including but not limited to any disputes under this Agreement or any Notice to Vacate pursuant to federal law, the All Writs Act; 18 U.S.C. § 1651(a); 21 U.S.C. § 853(g) and *United States v. Stazola*, 893 F.2d 34 (3rd Cir. 1990). The Parties specifically agree that state and local law, including any and all state and local laws related to landlord tenant issues, do not apply to this Agreement.

25. **Security Deposits and Held Rent by Previous Landlord.** In accordance with the Consent Order of Forfeiture entered in this matter, the United States shall request that any and all security deposits or rent deposits held by any property manager shall be turned over to the United States and held in escrow pending disbursal or application in accordance with the Lease. To the extent that the United States is unable to obtain the security deposits or rent deposits held by the previous property manager, the Occupant understands and agrees that the return of any security deposit previously paid by the Occupant will be a matter solely between the Occupant and the prior owner.

26. **Consent Order of Forfeiture.** Upon the entry of a Consent Order of Forfeiture or the entry of a Judgment or Decree of Forfeiture (collectively "FOF"), the following terms apply:

   a. **Property Sold Subject to the Lease.** Occupant agrees that the Property may be sold subject to the Lease.

   b. **Marketing.** The Occupant understands that USMS intends to sell the Property upon the entry of the Consent Order of Forfeiture. The Occupant shall cooperate fully with the USMS, its representatives and contractors to allow such disposal or sale of the Property. The cooperation the Occupant must provide includes but is not limited to: providing entry to appraisers, realtors, and any and all other USMS representatives or contractors, and allowing one or more sale signs to be placed and to remain on the Property. Occupant shall provide entry for marketing purposes upon receipt of reasonable notice as defined in the Paragraph titled "Right of Entry". Breach of this provision constitutes a material breach of this Agreement and shall be considered a default which the Occupant may not cure and shall result in the immediate termination of the Lease and/or Agreement. If the Occupant receives a notice of a breach of this requirement to cooperate with marketing the Property, the Occupant shall vacate the Property within 21 days of receipt of the notice of the breach.

   c. **Assignment of Lease.** The Occupant understands and agrees that if the USMS closes on a sale or otherwise finally disposes of the Property before April 30, 2021 or before any mutual termination of the Occupant's possessory interest in the Property prior to April 30, 2021, the Lease, but not this Agreement, shall be assigned to the purchaser.

27. **Waiver.** The USMS' failure at any time to require performance, or to enforce any provision hereof shall not be construed as a waiver or limitation of the USMS' right to subsequently enforce and compel strict compliance with any and all terms of this Agreement.

28. **Entire Agreement.** This Agreement, which incorporates the terms of the attached lease, and any Order or Stipulation to which this Agreement is attached, contains the entire agreement between the Parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the Occupants occupying the Property. Any, and all, amendments to this Agreement must in writing and be executed by all Parties.

**UNITED STATES MARSHALS SERVICE**
- Signature: _____
- Print Name: _____
- Title: Deputy U.S. Marshal
- Date: _____
- Emergency Number (888) 600-3004

**OCCUPANT:**
- Signature: _____
- Print Name: _____
- Date: _____
- Phone Number: _____
- Cell Number _____

**OCCUPANT:**
- Signature: _____
- Print Name: _____
- Date: _____
- Phone Number: _____
- Cell Number _____